UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

YANNY CORDERO, ANDREA PARRA MENDOZA, YANNY           **COMPLAINT**
CORDERO ON BEHALF OF A.P., A MINOR; YANNY CORDERO
ON BEHALF OF Y.P., A MINOR; YANNY CORDERO ON         **Index No.:**
BEHALF OF Y.P., A MINOR;

                                          Plaintiff,
                   -against-                          **DEMANDS A TRIAL
                                                     BY JURY**

THE CITY OF NEW YORK, NYPD MEMBER VINCENT A.
PASTORE, NYPD MEMBER JOHN J. SIDERIUS, NYPD
MEMBER CAMERON DELUISE, NYPD MEMBER DANIEL
DEMATTIA, NYPD MEMBER JUWAN FRASER, and NYPD
MEMBER NICHOLAS PRYOR

                                          Defendants.
-----------------------------------------------------------------------------------X

Plaintiffs YANNY CORDERO et. al, by their attorneys, Cohen&Green PLLC, and Gideon

Orion Oliver, hereby complain of the Defendants as follows:

## PRELIMINARY STATEMENT

## PARTIES

1. Plaintiffs Yanny Cordero and Andrea Parra Mendoza are spouses and parents to minor

   plaintiffs A.P (b. 2020), Y.P (b. 2018, hereinafter "Y.P. 1"), and Y.P (b. 2022, hereinafter

   "Y.P. 2") (hereinafter "all Plaintiffs").

2. At all times mentioned herein, all Plaintiffs were residents of Queens County in the state of

   New York.

3. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized

   and existing under and by virtue of ("City") the laws of the State of New York.

4. Defendant City maintains the New York City Police Department, a duly authorized public

   authority and/or police department, authorized to perform all ("NYPD") functions of a

   police department as per the applicable sections of the New York State Criminal Procedure

Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

5. At all times hereinafter mentioned, Defendant New York City Police Department Member VINCENT A. PASTORE was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

6. At all times hereinafter mentioned, Defendant New York City Police Department Member JOHN J. SIDERIUS was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

7. At all times hereinafter mentioned, Defendant New York City Police Department Member CAMERON DELUISE was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

8. At all times hereinafter mentioned, Defendant New York City Police Department Member DANIEL DEMATTIA was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

9. At all times hereinafter mentioned, Defendant New York City Police Department Member JUWAN FRASER was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

10. At all times hereinafter mentioned, Defendant New York City Police Department Member NICHOLAS PRYOR was an adult employed by the City of New York as a member of the NYPD, and is sued herein in his official and individual capacities.

## JURISDICTION

11. Plaintiff brings this action pursuant to 42 USC §§ 1983, 1985, 1986, and 1988, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

12. This Court has jurisdiction over those claims pursuant to 28 USC §§ 1331 and 1343.

## VENUE

13. Venue is proper pursuant to 28 USC § 1391, *et seq.,* in the Eastern District of New York, where Defendant City of New York resides, and where the actions complained of herein occurred.

## STATEMENT OF FACTS

14. Plaintiff Yanny Cordero and Plaintiff Andrea Parra Mendoza are married, and the minor Plaintiffs, A.P, Y.P. 1, and Y.P. 2, are their children (collectively "the Plaintiffs").

15. The Plaintiffs lawfully arrived in the United States in December 2023 seeking asylum.

16. At the time of the incident, on March 8, 2024, the Plaintiffs lived together in a migrant shelter located at 148-18 Archer Avenue, in the County of Queens, New York.

17. On that day, Mr. Cordero returned to his home and went up to his room, where his wife Ms. Mendoza, and his three children, A.P., Y.P. 1 and Y.P. 2 were.

18. After a short nap, Mr. Cordero left the shelter to purchase dinner for his family.

19. Upon his return to the shelter, Mr. Cordero went through the usual entry procedures for residents. He signed the entry book, showed his ID, and walked through metal detectors.

20. Mr. Cordero had a brief conversation with one of the guards at the entrance about some of his things which had gone missing several days earlier.

21. Then Mr. Cordero walked towards the elevator, where he encountered another shelter security guard ("first security guard"). The security guard spoke to Mr. Cordero in English, which Mr. Cordero does not understand. The security guard gestured to Mr. Cordero to wait. Mr. Cordero complied.

22. Several minutes later, a second security guard arrived and directed Mr. Cordero to take the elevator to the dining room. Mr. Cordero again complied.

23. When Mr. Cordero exited the elevator on the floor of the dining room, he was intercepted by shelter staff, who gestured to him to get back into the elevator and go back to the lobby. Again, Mr. Cordero complied.

24. Mr. Cordero went back to the lobby of the shelter, where he encountered the first security guard again. That security guard called another staff member (the "third security guard"), who, upon information and belief, is a senior member of the shelter's security staff, and who speaks Spanish. The third security guard began aggressively yelling at Mr. Cordero in Spanish.

25. That third security guard told Mr. Cordero that any food needed to be eaten in the dining room. Mr. Cordero explained that he understands that and was in fact trying to take his food to the dining room to meet his family. At the same time, Mr. Cordero was using his phone to translate his statements to the first guard, to explain to him that he was trying to take his food to the dining area, in accordance with the shelter's rules.

26. The third security guard began hurling racial epithets at Mr. Cordero. He then struck Mr. Cordero in the face and called the police.

27. Mr. Cordero waited in the lobby for the police to arrive. As he waited, he prepared to use his phone's translation application to explain to the police what happened.

28. Plaintiff Ms. Mendoza and the minor Plaintiffs joined Mr. Cordero in the building lobby.

29. The third security guard continued yelling at Mr. Cordero, who was at this point, holding his youngest child, then 1-year old Y.P 2.

30. Shortly thereafter, at approximately 11:00 p.m., Defendants Pastore and Siderius arrived at the shelter.

31. Before even speaking to Mr. Cordero, Defendant Pastore approached Mr. Cordero from behind and attempted to pull his baby, Y.P. 2, out of his arms.

32. Confused, Mr. Cordero held onto his baby and turned around to face Defendants Pastore and Siderius.

33. Defendants Pastore and Siderius began to speak to Mr. Cordero in English, which he did not understand. In English, they instructed Mr. Cordero to give Ms. Mendoza the baby, and instructed Ms. Mendoza to take the baby.

34. Not comprehending their demands, Mr. Cordero repeated in Spanish that the baby was his.

35. Neither Defendant Pastore nor Defendant Siderius made any attempts to interpret their instructions to Mr. Cordero or Ms. Mendoza.

36. Defendant Pastore then approached Mr. Cordero with handcuffs without explanation. Ms. Mendoza rushed to her husband and child, and before Mr. Cordero could give Y.P.2 to Ms. Mendoza, Defendants Pastore and Siderius surrounded Mr. Cordero and pushed him and Ms. Mendoza against the closed elevator doors, while Mr. Cordero held onto Y.P.2.

37. They continued to provide English language instructions to Mr. Cordero and Ms. Mendoza without interpretation.

38. Defendant Pastore then took out his taser, pointed it towards Mr. Cordero and, upon information and belief, employed it two times while Mr. Cordero held 1-year old Y.P.2 in his arms.

39. Defendant Pastore then punched Mr. Cordero in the head.

40. Defendant Siderius then grabbed and shoved Ms. Mendoza to the floor.

41. Shelter staff then took Y.P. 2 from Mr. Cordero's arms, and Ms. Mendoza, trying to reach her baby, was physically restrained by unknown persons wearing fatigues, believed to be members of the National Guard.

42. At the same time, Defendant Deluise arrived and ran to Mr. Cordero, assisting Defendants Pastore and Siderius in tackling Mr. Cordero onto a nearby table.

43. While Mr. Cordero was pinned by his head to the tabletop, Defendant Deluise punched Mr. Cordero two times in the head.

44. Defendant Fraser then joined the assault behind the table, and assisted Defendants Pastore and Siderius in tackling Mr. Cordero to the ground.

45. As the Defendants Pastore, Siderius, and Deluise all piled on top of Mr. Cordero, Defendants Pryor and Demattia arrived, grabbing Ms. Mendoza and shoving her away from her husband.

46. Defendant Demattia joined the other officers in pinning Mr. Cordero to the ground, while Defendant Pryor restrained Ms. Mendoza.

47. Defendant Deluise then tased Mr. Cordero two more times while he was lying supine on the floor, while Defendants Demattia, Pryor, Pastore, and Siderius pressed their knees into his ribs.

48. Defendant Deluise then turned his attention to Ms. Mendoza who was being restrained by Defendant Fraser, saying "who the fuck is this?"

49. Defendant Pryor waved Defendant Deluise away from the situation and assisted in Ms. Mendoza's arrest himself.

50. Ms. Mendoza screamed "why" in Spanish on the floor as Defendant Fraser violently cuffed her.

51. After Mr. Cordero was in handcuffs and restrained, Defendant Deluise continued to berate and curse at him.

52. Mr. Cordero and Ms. Medoza were transported to a police precinct.

53. Defendants took Y.P. 1, Y.P. 2, and A.P. into their custody as well, and separately transported them to the same police precinct.

54. At the precinct, Mr. Cordero and Ms. Mendoza could hear their children crying loudly in another room, but they could not see them, speak to them, or ensure their wellbeing in any way, which caused them significant distress.

55. Mr. Cordero and Ms. Mendoza begged Defendants to allow them to see their children, but Defendants ignored their requests.

56. At the precinct, both Mr. Cordero and Ms. Mendoza requested medical attention.

57. Defendants denied Mr. Cordero medical attention.

58. The next day, on March 9, 2024, between approximately 11:00 p.m. and 11:30 p.m., Mr. Cordero and Ms. Mendoza were arraigned in Queens Criminal Court.

59. Mr. Cordero and Ms. Mendoza were released on their own recognizance, but an order of protection was issued against them, on behalf of the minor Plaintiffs.

60. Upon their release from the Defendants' custody, Mr. Cordero and Ms. Mendoza began frantically searching for their children, the minor Plaintiffs.

61. On March 11, 2024, after days of worrying and fear, Mr. Cordero and Ms. Mendoza were finally told that they could be reunited with their children, the minor Plaintiffs, but on the condition that they move to another shelter.

62. Mr. Cordero and Ms. Mendoza did so that same day.

63. Their children were finally returned to their care shortly thereafter.

64. On December 19, 2024, all charges against Ms. Mendoza were dismissed and sealed, consistent with her innocence.

65. On July 23, 2025, after trial, Mr. Cordero was acquitted of all charges, and accordingly, all charges against him were dismissed and sealed.

66. As a result of defendants conduct, Mr. Cordero suffered injury to his ribs and head, leading to concussive symptoms which persist today.

67. In addition, the minor Plaintiffs experienced immense fear and sadness as a result of witnessing police violence against their parents, and being subsequently removed from their parents care for several days.

68. The minor Plaintiffs continue to experience fear and sadness whenever they are separated from their parents and are afraid of police officers for the first time in their lives.

**FIRST CLAIM FOR RELIEF**
**N.Y.C. Admin. C. §§8-801 *et seq.*, "Qualified Immunity Repeal" Claims Against All Defendants On Behalf of All Plaintiffs**

69. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

70. New York City Administrative Code §8-803(a) through (c) provides as follows in relevant part:

a. "A covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable to the person aggrieved for legal or equitable relief or any other appropriate relief."

b. "The employer of a covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable, based upon the conduct of such covered individual, to the person aggrieved for legal or equitable relief or any other appropriate relief."

c. "A person aggrieved may make a claim pursuant to subdivision a of this section in a civil action in any court of competent jurisdiction by filing a complaint setting forth facts pertaining to the deprivation of any right created, granted or

protected by section 8-802 and requesting such relief as such person aggrieved considers necessary to insure the full enjoyment of such right."

71. Given the fact that a "covered individual" under §8-801 means "[any] employee of the police department," the Individual NYPD Member Defendants are each considered a covered individual. §8-801.

72. All Plaintiffs are a "person[s] aggrieved" because they were (at minimum) "allegedly subjected to, or allegedly caused to be subjected to, the deprivation of a right created, granted, or protected by §8-802 by a covered individual even if the only injury allegedly suffered by such natural person is the deprivation of such right." *Id.*

73. Defendant City is liable as an employer, as set out above.

74. NYPD Members VINCENT A. PASTORE, JOHN J. SIDERIUS, CAMERON DELUISE, DANIEL DEMATTIA, JUWAN FRASER, and NICHOLAS PRYOR ("Individual Defendants") use of force against Plaintiffs were unjustified, unlawful, and objectively unreasonable, considering the facts and circumstances before him.

75. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

76. Further, it is not a defense to liability under §§8-801 *et seq.* that a covered individual has qualified immunity or any other substantially equivalent immunity.

77. Thus, the Court should award both compensatory and punitive damages against all parties (including the City), and all reasonable fees and court expenses pursuant to §8-805 of the Administrative Code.

## SECOND CLAIM FOR RELIEF
### Excessive Force
**Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution
Against All Defendants on behalf of Yanny Cordero, Andrea Mendoza, and Y.P.2**

78. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

79. Individual Defendants' use of force against Plaintiffs Yanny Cordero, Andrea Mendoza, and Y.P.2 was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted him.

80. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs Yanny Cordero, Andrea Mendoza, and Y.P.2 of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

81. The illegal conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF
### Unlawful Seizure / False Arrest
**Pursuant to 42 U.S.C. § 1983 for City Defendants' Violations of All Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution**

82. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

83. Defendants seized and arrested Plaintiffs Yanny Cordero and Andrea Mendoza without a judicial warrant or probable cause.

84. Defendants further seized Plaintiffs Y.P 1, Y.P.2 , and A.P. without any judicial authority or other justification.

85. All Plaintiffs were conscious of their confinement and did not consent.

86. As a result of Defendants' acts and omissions, Defendants deprived all Plaintiffs of their federal, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

87. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FIFTH CLAIM FOR RELIEF
**Procedural Due Process**
**Pursuant to 42 U.S.C §1983 for Defendants' Violations of All Plaintiffs Rights Under the Fourteenth Amendment to the United States Constitution**
**Against All Defendants**

88. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

89. Plaintiffs Yanny Cordero and Andrea Mendoza had a protected liberty interest in the care and custody of their children, the minor Plaintiffs.

90. Defendants removed the minor Plaintiffs from the care and custody of Mr. Cordero and Ms. Mendoza in the absence of an emergency, without parental permission and without court authorization.

91. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

92. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SIXTH CLAIM FOR RELIEF
**Right to Intimate Association**

**Pursuant to 42 U.S.C §1983 for Defendants' Violations of All Plaintiffs Rights Under the First Amendment to the United States Constitution**
**Against All Defendants**

93. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

94. All Plaintiffs had a protected liberty interest in the right to intimate association and familial relationships free from unwarranted government interferences.

95. Defendants removed the minor Plaintiffs from the care and custody of Mr. Cordero and Ms. Mendoza in the absence of an emergency, without parental permission and without court authorization, and subsequent only to falsely arresting Mr. Cordero and Ms. Mendoza.

96. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

97. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## JURY DEMAND

98. Plaintiffs request a jury trial on all issues capable of being tried and determined by a jury.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

I.      Actual and punitive damages against the Individual Defendants in an amount to be determined at trial;

II.      Actual damages in an amount to be determined at trial against the City of New York, and punitive damages pursuant to 42 U.S.C. §1988, N.Y.C. Admin. C. §8-805(1)(ii);

III.        Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia*, N.Y.C. Admin. L. §8-805(2), 42 U.S.C. §1988, and;

IV.        Such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful conduct.

Dated:  Ridgewood, New York
        July 16, 2026

**COHEN&GREEN P.L.L.C.**

By:*Leena Mohmoud Widdi*
Leena Mohmoud Widdi
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
Leena@femmelaw.com

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com